UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT M.,

                  Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

_____

**DECISION AND ORDER**

6:19-CV-06771 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Robert M. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 12; Dkt. 14), and Plaintiff's reply (Dkt. 17). For the reasons discussed below, the Commissioner's motion (Dkt. 14) is granted and Plaintiff's motion (Dkt. 12) is denied.

## BACKGROUND

Plaintiff protectively filed his application for DIB on June 6, 2016. (Dkt. 7 at 24,147-153).[1] In his application, Plaintiff alleged disability beginning September 17, 1999. (*Id.* at 24, 147). Plaintiff's application was initially denied on August 12, 2016. (*Id.* at 24, 82-87). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Dale Black-Pennington on September 18, 2018, with Plaintiff appearing in person in Rochester, New York, and the ALJ presiding via video from Albany, New York. (*Id.* at 24, 35-70). On October 24, 2018, the ALJ issued an unfavorable decision. (*Id.* at 24-31). Plaintiff requested Appeals Council review; his request was denied on August 20, 2019, making the ALJ's determination the Commissioner's final decision. (*Id.* at 4-9). This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.  The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2004.  (Dkt. 7 at 26).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from September 17, 1999, the alleged onset date, through June 30, 2004, the date last insured.  (*Id.*).

At step two, the ALJ found that through the date last insured Plaintiff suffered from the severe impairment of back injury post multiple discectomies.  (*Id.*).

At step three, the ALJ found that through the date last insured Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.*).  The ALJ particularly considered the criteria of Listing 1.04 in reaching her conclusion.  (*Id.*).

Before proceeding to step four, the ALJ determined that through the date last insured Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the additional limitations that Plaintiff:

> is able to carry 5-10 pounds frequently but not continuously; able to stand/walk for 4 hours of an 8-hour work day in 45-60 minute intervals; is able to sit for 6 hours of an 8-hour workday in up to 20 minute intervals; not able to bend or crouch or perform repetitive twisting; must avoid unprotected heights, heavy moving mechanical parts, vibrations, and balancing; requires the ability to alternate sitting and standing or walking for comfort; able to reach in all directions; able to frequently but not continuously climb ramps or stairs; and unable to climb ladders, ropes, or scaffolds.

(*Id.* at 27).  At step four, the ALJ found that Plaintiff could not perform his past relevant work as a carpenter and carpenter supervisor.  (*Id.* at 30).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of document preparer, table worker, and parking lot attendant.  (*Id.* at 30-31).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 31).

## II.   The ALJ's Decision is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the RFC is not supported by substantial evidence, and (2) the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician, David Hope, M.D.  (Dkt. 12-1 at 1, 16-26).  The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

### A.    Assessment of Plaintiff's RFC

Plaintiff's first argument is that the ALJ oversimplified her evaluation of Plaintiff's medical treatment by failing to properly account for Plaintiff's severe physical impairments and appropriately evaluate the medical opinion evidence in determining his RFC.  (Dkt. 12-1 at 16-23).  Plaintiff argues that the ALJ's assessment of the RFC requiring him to perform "light work" is not supported by evidence in the record, including the opinions offered by E. Robert Wilson, M.D., an independent medical examiner who examined

Plaintiff in connection with a Workers' Compensation claim, and Peter Capicotto, M.D., Plaintiff's treating orthopedic surgeon.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id*. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

The RFC requires Plaintiff to perform light work, with additional limitations. (Dkt. 7 at 27). In reaching the RFC, the ALJ explained that she considered the medical evidence before her, including the records documenting Plaintiff's surgeries in November 1999 and April 2000 to address disc herniation in his lumbar spine, but noted that the vast majority of Plaintiff's medical records are dated well after the June 30, 2004 date last insured. (*Id.* at 28). She noted that included among the records post-dating the date last insured are

those relating to a workplace injury in March of 2010.  Plaintiff received a total disc replacement surgery in July of 2010 as a result of that injury, and the ALJ concluded that those records had no bearing on Plaintiff's functional limitations prior to June 30, 2004. She also specifically addressed the opinions of Dr. Capicotto and Dr. Wilson.  (*Id*. at 28-29).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]"  20 C.F.R. § 404.1527(c)(2).  Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).  These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id.*  Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion."  20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the

Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

Dr. Capicotto, Plaintiff's treating orthopedic surgeon, began seeing Plaintiff in October of 1999. (Dkt. 7 at 212). Following Plaintiff's two discectomy surgeries, Dr. Capicotto opined that Plaintiff was disabled in connection with Workers' Compensation proceedings. (*Id.* at 219, 225, 226, 230, 273, 274). Dr. Capicotto opined in August of 2002 that Plaintiff was unable to lift anything greater than 5 to 10 pounds and recommended that he not sit, stand, or walk for intervals greater than 45 to 60 minutes.[2] (*Id.* at 28, 227). In June 2003, Dr. Capicotto recommended that Plaintiff engage in a program of "aggressive physical therapy" and return for orthopedic care as needed. (*Id.* at 230). The ALJ noted that Plaintiff did not return to see Dr. Capicotto until five years later, well after the date last insured.

Dr. Wilson conducted multiple examinations of Plaintiff between 2000 and 2003, in connection with Plaintiff's Workers' Compensation claim. (*Id.* at 246-49, 254-58, 261-64, 266-70, 276-80). In May of 2003, Dr. Wilson opined that Plaintiff could return to work in a position where he did not lift more than 20 pounds, do any repetitive bending, and

---

[2]    In her decision, the ALJ indicates that the opinion was issued in March of 2002 but the record she cites to is dated August of 2002. Any error from this mistake is harmless.

would be permitted to alternate sitting and standing at 30-minute intervals. (*Id.* at 277, 280).

The ALJ gave the opinions of Dr. Capicotto and Dr. Wilson considerable weight, "as they provide the fullest possible sense of claimant's functional status during the relevant time period, they are fully consistent with the relevant medical records in evidence, and they are consistent with the residual functional capacity set forth above." (*Id.* at 29).

In not giving the opinions even greater weight, the ALJ noted that both doctors had made reference to Plaintiff's "disability," presumably for Workers' Compensation purposes. The ALJ pointed out that not only is a finding of disability reserved for the Commissioner, *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("A treating physician's statement that the claimant is disabled cannot itself be determinative." (citation omitted)), but disability is defined differently under Workers' Compensation rules because those assessments do not constitute function by function medical assessments of the ability to perform basic work activities. In addition, Workers' Compensation assessments relate to a claimant's ability to perform a particular past job, which is not inconsistent with the ALJ's conclusion here that the Plaintiff was precluded from performing his past relevant work. This was an appropriate consideration for the ALJ to address when assessing the opinions. *See Alexis L. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1669-DB, 2021 WL 878473, at *11 (W.D.N.Y. Mar. 9, 2021) ("While Plaintiff notes that treating sources claimed she had a temporary 100% impairment for worker's compensation purposes, the ALJ correctly noted that such statements did not reflect SSA's standards and lacked value for assessing RFC. Furthermore, these sources did not provide assessments of Plaintiff's functional

limitations; rather, they indicated Plaintiff had a 100% temporary disability for purposes of worker's compensation); *Maria J. v. Comm'r of Soc. Sec.*, No. 19-CV-0899MWP, 2020 WL 7296751, at *7 (W.D.N.Y. Dec. 11, 2020) (collecting cases holding that opinions offered in workers' compensation cases apply different standards and are not binding in the Social Security context).

Finally, the ALJ noted that she considered Plaintiff's own reports and the entire evidentiary record in determining Plaintiff capable of performing light work with the reasonable limitations described. (*Id.* at 29). She acknowledged that Plaintiff has "well-documented health issues that cause significant work-related limitations," but to the extent that the impairments prevented him from performing any type of work, "his allegations are directly contradicted by the medical record, including the medical opinion evidence of record." (*Id.*). These are appropriate, good reasons to less than fully credit Plaintiff's own testimony, and the Court finds no error in the ALJ's assessment.

While Plaintiff argues that the RFC is not specifically tethered to a particular medical opinion or piece of evidence, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta,* 508 F. App'x at 56; *see also Kevin F. v. Comm'r of Soc. Sec.*, No. 5:18-CV-1454 (ATB), 2020 WL 247323, at *9 (N.D.N.Y. Jan. 16, 2020) ("However, the ALJ need not reconcile every shred of medical evidence in order to support his opinion with substantial evidence."). The Court finds that the ALJ did that here.

In sum, the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence. The ALJ gave good reasons for the weight afforded to the medical opinions. The limitations assessed by Dr. Capicotto and Dr. Wilson are consistent with an RFC requiring light work. Plaintiff points to no medical opinion in the record that he requires greater physical limitations than those assessed in the RFC. It is clear from the written determination that the ALJ, after considering all the evidence in the record, including the opinion evidence, Plaintiff's own testimony, and the medical records, assessed an RFC that is supported by the record.

### B.   <u>Assessment of Dr. Hope's Opinion</u>

The Court finds no error in the ALJ's assessment of Dr. Hope's opinion. Dr. Hope began treating Plaintiff in July 2013, nine years after the date last insured, and the opinion was issued on September 26, 2018, over fourteen years after the date last insured. (Dkt. 7 at 537-541). In the opinion, Dr. Hope gave Plaintiff a prognosis of "100% disability," finding Plaintiff has reduced range of motion, pain with palpation in the lumbar/sacral spine, muscle spasms, and bilateral lower extremity weakness. (*Id.* at 538). In response to the question, "[h]as the patient been limited as stated above since at least June 29, 2004," Dr. Hope checked the box for "Yes," and indicated that the basis for that opinion was Plaintiff's "[h]istory of low back pain since 9/17/1999." (*Id.* at 541). The ALJ stated that "because Dr. Hope's assessment does not include any insight into claimant's limitations as

of the date last insured, the undersigned is constrained from assigning this opinion any meaningful weight." (*Id.* at 28).

In order for medical evidence "to provide substantial evidence of a disability during the relevant time period, the records must actually shed light on [Plaintiff's] condition during that period." *Clark v. Saul*, 444 F. Supp. 3d 607, 621 (S.D.N.Y. 2020); *Patterson v. Comm'r of Soc. Sec.*, No. 1:18-CV-0556 (WBC), 2019 WL 4573752, at *5 (W.D.N.Y. Sept. 20, 2019) ("A medical opinion rendered well after a plaintiff's date last insured may be of little, or no, probative value regarding plaintiff's condition during the relevant time period."). Opinions issued after the relevant time period, but which shed light on it are deemed retrospective and should be considered. *Wallace v. Saul*, No. 3:20 CV 0002 (RMS), 2021 WL 650932, at *8 (D. Conn. Feb. 19, 2021) ("Retrospective diagnoses and opinions are those from a treating physician that relate to a time period in the past, including periods when the physician was not the treating source."); *Ferry v. Saul*, No. 19-CV-1642L, 2020 WL 6699520, at *3 (W.D.N.Y. Nov. 13, 2020) (noting that a retrospective diagnosis may only be probative of an earlier-arising disability where there is no contradictory medical evidence or compelling non-medical evidence). But where the evidence is from outside of the time period and not probative of the matters before the ALJ, the ALJ is not required to give the opinions the same level of deference as she otherwise would. *Clark*, 444 F. Supp. 3d at 621 ("Because none of the opinions from treating physicians relate to the relevant time period, we do not find the 'treating physician rule' to have been violated."); *Ruff v. Saul*, No. 3:19-CV-01515 (SRU), 2020 WL 6193892, at *10

(D. Conn. Oct. 22, 2020) ("The treating physician rule . . . does not technically apply when the physician was not the treating physician at all during the relevant time period.").

Here, the fact alone that Dr. Hope did not even first treat Plaintiff until nine years after his date last insured and issue his opinion until fourteen years after the relevant time period challenges the likelihood that Dr. Hope was capable of reasonably opining on Plaintiff's condition during the relevant time period, notwithstanding his notation indicating his awareness that Plaintiff had a history of back pain since 1999 and his opinion that Plaintiff had been limited in his abilities since at least June 29, 2004. But beyond the length of time is the additional fact that Dr. Hope first saw Plaintiff several years after a 2010 injury resulting in a total disc replacement surgery. The intervening injury coupled with the fact that Dr. Hope did not treat Plaintiff in close proximity to the relevant time period provided reasonable reasons for the ALJ to decide she was constrained from giving Dr. Hope's opinion any weight. The Court finds no error in her analysis.

In sum, having considered Plaintiff's arguments and the record as a whole, the Court finds no basis for reversal or remand.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 15, 2021
        Rochester, New York

- 15 -